UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REGINA MARIE RICH,

        Plaintiff,

v.                                          Case No. 1:12-cv-255
                                         Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on October 16, 1956 (AR 146).[1]  She alleged a disability onset date of July 26, 2008 (AR 146).  Plaintiff earned a GED and had previous employment as a nursing home aide, cashier and as a driver for a newspaper  (AR 152, 155).  Plaintiff  identified her disabling conditions as scoliosis, arthritis, depression, anxiety, high blood pressure and foot injuries (AR 151).  The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on February 25, 2011 (AR 10-16).  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th

Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant work

through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861

F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied

in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 26, 2008 and that she met the insured status requirements under the Act through June 30, 2012 (AR 12). Second, the ALJ found that plaintiff has the following severe impairments: left foot contusion; status post right lower extremity fracture repair; chronic obstructive pulmonary disease (COPD); acute back pain due to thoracic strain and thoracic scoliosis; hypertension; and depression (AR 12).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 19).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can perform postural activities occasionally, cannot be exposed to concentrated dust, fumes, and gases, cannot climb ladders, ropes, or scaffolds, cannot work around heights or hazards, and is limited to simple moderately complex work.

(AR 12).  The ALJ also found that plaintiff was capable of performing past relevant work as a cashier, work which does not require the performance of work-related activities impacted by the claimant's residual functional capacity (RFC) (AR 15).   Accordingly, the ALJ determined that plaintiff has not been under  a disability, as defined in the Social Security Act, from July 26, 2008 (the alleged onset date) through February 25, 2011 (the date of the decision) (AR 16).

4

## III.  ANALYSIS

Plaintiff raised three issues on appeal:

**A.  The ALJ committed reversible error by failing to properly weigh evidence and by using improper so-called boilerplate language which does not provide an adequate basis for appellate review.**

Plaintiff contends that the ALJ used meaningless "boilerplate language" to evaluate her credibility, when he stated that:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 13).  Plaintiff's Brief at p. 7.  Plaintiff relies on the Seventh Circuit decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), which criticized the Agency's use of this language in ALJ decisions:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above" — above is just the foreshadowed conclusion of that later assessment.  A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility.  That gets things backwards.  The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches.  Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be.  In this regard we note the tension between the "template" and SSR 96–7p(4), www. ssa. gov/ OP_ Home/ rulings/ di/ 01/ SSR 96– 07– di– 01. html (visited Jan. 4, 2012), which states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  The applicant's credibility thus cannot

5

> be ignored in determining her ability to work (her residual functional capacity, in
> SSA-speak).

*Bjornson*, 671 F.3d at 645-46. The court also opined that "[t]he Social Security Administration had

better take a close look at the utility and intelligibility of its 'templates.'" *Id.* at 646.

While the Seventh Circuit noted that "we first stubbed our toe" on this "opaque

boilerplate," *id.* at 644, the court did not summarily reverse the ALJ's decision for using the

boilerplate, *see id.* at 644-49. Rather, the Court considered the ALJ's specific reasons for rejecting

the ALJ's credibility determination. *See id.* at 646 ("[t]he administrative law judge based his doubts

about Bjornson's credibility on his assessment of the medical reports or testimony of the three

doctors whom we've mentioned"). Assuming that this Court agreed with the Seventh Circuit's

characterization of the Commissioner's boilerplate language, the ALJ's use of the language is not,

in and of itself, grounds for reversal. Accordingly, plaintiff's claim of error is denied.

In his statement of error, plaintiff also contends that the ALJ failed to properly weigh

the evidence. Plaintiff's brief does not develop this alleged error in any detail. Rather, plaintiff has

presented only a cursory argument that the ALJ gave little weight to the opinion of a consulting

psychologist. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th

Cir. 1997). Accordingly, this claim of error is waived.

> **B.      The ALJ committed reversible error by making
>           adverse credibility findings without considering
>           plaintiff's inability to afford treatment.**

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions

among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner*

*of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his

examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ evaluated plaintiff's credibility as follows:

> The claimant's credibility is poor. It should be noted at the outset that the claimant's medical records are sparse. Second, there are minimal objective findings in the record (Exhibit 11F). In August 2010 when the claimant visited the emergency room (Exhibit 12F), her straight-leg raising was negative bilaterally. The claimant had a normal gait. She had neither motor nor sensory deficit. Moreover, she has engaged in a wide variety of activities of daily living. For instance, she does dishes, helps to prepare supper, cleans her own things, does her own laundry, rolls her own cigarettes, and spends significant amounts of time playing games on the computer. There is evidence that she is able to drive herself (Exhibit 11F/4, 5E/8). She also fed and provided water to her dog (Exhibit 5E/6). She indicated no problems with personal care. She could cook easy meals and sometimes cooked for herself and her friend's family (Exhibit 5E/7). She could read, do crosswords, watch television, play cards, and crochet (Exhibit 5E/9). She claimed that back pain was her primary problem. However, she has not had surgery, injections, or physical therapy for her back problem. Therefore, after considering the above factors, I find that the claimant is not fully credible with respect to allegations of debility.

7

Mary Fisk, the claimant's friend, submitted a third-party statement in July 2009 (Exhibit 4E). Ms. Fisk noted that the claimant had no problem with personal care. Ms. Fisk stated that the claimant prepared sandwiches daily, drove a car, shopped in stores, watched television, did crosswords, played cards, talked on the telephone, and could walk a block or so.

Ms. Fisk's statement of varied activities engaged in by the claimant is not consistent with the claimant's allegations of debility.

(AR 15).

Plaintiff contends that the ALJ could not reject her subjective complaints based upon her failure to seek treatment without first considering whether that failure resulted from her inability to afford treatment. Plaintiff's Brief at p. 8. In this regard, plaintiff states that the ALJ "missed the multiple references to Plantiff's financial woes" and that she had only been treating at hospital emergency rooms due to a complete lack of funds and insurance coverage. *Id.* Plaintiff's alleged error apparently refers to the ALJ's failure to follow SSR 96-7p ("Policy interpretation ruling Titles II and XVI: Evaluation of symptoms in disability claims: Assessing the credibility of an individual's statements"), which provides in pertinent part that:

[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility. For example: . . .

* The individual may be unable to afford treatment and may not have access to free or low-cost medical services. . . .

8

SSR 96-7p, 1996 WL 374186 at *7-8 (July 2, 1996).[2]

The issue of plaintiff's inability to afford health care was placed squarely before the ALJ at the administrative hearing.  When asked, "are you being treated for your back," plaintiff responded, "I am not because I don't have any insurance and I'm not employed so therefore I can't afford a doctor" (AR 32).  Plaintiff testified that she was last treated for her back in the emergency room in August 2010, and denied that she ever had back surgery, pain shots or physical therapy (AR 32).

The ALJ's credibility determination is based in large part on the lack of treatment records and plaintiff's failure to obtain treatment for her back (i.e., surgery, injections or physical therapy).  The ALJ found that plaintiff's credibility was poor, in large part due to her sparse medical record and lack of treatment for her back problems.  Because the ALJ did not address plaintiff's explanation for her lack of treatment, the Court finds that the ALJ's credibility determination was not supported by substantial evidence.  Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate plaintiff's credibility, specifically plaintiff's explanation that she could not afford medical treatment.

### C.    The ALJ did not follow the vocational expert's answer to an accurate hypothetical question.

Plaintiff contends that the hypothetical question posed to the vocational expert (VE) was not accurate.  An ALJ's finding that a plaintiff possesses the capacity to perform substantial

---

[2] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency.  20 C.F.R. § 402.35(b)(1).  While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed.Appx. 496, 498 (6th Cir. 2006).

gainful activity that exists in the national economy must be supported by substantial evidence that

the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health*

*and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through

the testimony of a VE in response to a hypothetical question which accurately portrays the

claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d

629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only

include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and*

*Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). Here, the ALJ's hypothetical question posed

to the VE included those limitations as set forth in the RFC (AR 12, 46). Because the hypothetical

question and the RFC were based, in part, on the ALJ's flawed credibility determination, they too

were flawed. Accordingly, on remand, the Commissioner should also re-evaluate plaintiff's RFC

and whether she can still perform her previous job as a cashier.

### IV. CONCLUSION

The ALJ's decision is not supported by substantial evidence. Accordingly, the

Commissioner's decision shall be reversed and remanded pursuant to sentence four of 42 U.S.C. §

405(g). On remand, the Commissioner should re-evaluate plaintiff's credibility, specifically

plaintiff's explanation that she could not afford medical treatment. If this re-evaluation results in

10

a finding that some of plaintiff's complaints with respect to her back are credible, then Commissioner should also re-evaluate plaintiff's RFC and whether she can still perform her previous job as a cashier. A judgment consistent with this opinion shall be issued forthwith.


Dated: September 23, 2013                     /s/ Hugh W. Brenneman, Jr.
                                              HUGH W. BRENNEMAN, JR.
                                              United States Magistrate Judge